An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

IN THE SUPREME COURT OF THE STATE OF NEVADA

JUAN CARLOS CAMACHO-MORENO,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 59385

**FILED**

APR 1 5 2013

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

ORDER OF REVERSAL AND REMAND

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of one count of sexual assault of a child, one count of attempted sexual assault of a child, two counts of lewdness with a child, and two counts of indecent exposure. Second Judicial District Court, Washoe County; Charles M. McGee, Senior Judge.

Appellant Juan Carlos Camacho-Moreno resided in an apartment with his girlfriend and her two children. All of the charges against Camacho-Moreno stem from acts directed at his girlfriend's daughter, A.M. The crimes occurred when A.M. was between the ages of nine and eleven years old.

A.M. did not immediately come forward to report her sexual abuse. Her friends initially spoke with a school counselor about A.M.'s confession to them that she was being raped at home. Upon learning that information, the school counselor spoke with A.M. and contacted child protective services. After interviewing A.M. for a second time, the school counselor and the social worker from child protective services contacted the City of Sparks Police Department. The detective assigned to the case interviewed A.M. for a third time and, based on this interview, arrested Camacho-Moreno.

SUPREME COURT
OF
NEVADA

(O) 1947A

B-11062

Camacho-Moreno was charged with two counts of sexual assault of a child, one count of attempted sexual assault of a child, two counts of lewdness with a child, and two counts of indecent exposure. He was acquitted of one count of sexual assault and convicted of the remaining six counts. Camacho-Moreno's primary assertion of error on appeal is that the district court erred in making comments in the jury's presence that were overly prejudicial. We conclude that the district court's comments were improper and a new trial is warranted. As the parties are familiar with the facts, we do not recount them further except as necessary to our disposition.

### The district court's statements, made in the jury's presence, were overly prejudicial

Camacho-Moreno contends that the district court made inappropriate comments to the jury venire and during A.M.'s testimony. Specifically, he argues that the jury perceived an appearance of partiality and prejudice—in effect, denying him of his right to a fair and impartial trial. In response, the State points to the fact that all of the comments made by the district court were either passing comments or taken out of context. It also notes that the statements made during A.M.'s testimony were made within the context of instructing the jury on certain procedural issues.

Generally, when judicial misconduct occurs, in order to preserve the issue for appellate review, a party must move for a mistrial. Holderer v. Aetna Cas. and Sur. Co. 114 Nev. 845, 850, 963 P.2d 459, 463 (1998). If, however, "judicial deportment is of an inappropriate but non-egregious and repetitive nature," this court may review the misconduct. Parodi v. Washoe Medical Ctr., 111 Nev. 365, 370, 892 P.2d 588, 591

(1995). As such, judicial misconduct is reviewed for plain error. Id. at 368, 892 P.2d at 590. In cases where the "evidence [of guilt] is quite apparent, misconduct may so interfere with the right to a fair trial as to constitute grounds for reversal." Kinna v. State, 84 Nev. 642, 647, 447 P.2d 32, 35 (1968).

The line between a needed instruction and inappropriate remarks by a trial judge is not always clear. The United States Supreme Court has explained that a trial judge may explain and comment upon evidence, draw a jury's attention to certain facts, and express his or her opinion on the facts, but he or she must instruct the jury that it is the jury's responsibility to ultimately decide the matters before it. Quercia v. United States, 289 U.S. 466, 469 (1933). Further, comments relating to bias and racial prejudices are never appropriate and only serve to inflame passion and emotion. See Rush v. Smith, 56 F.3d 918, 922 (8th Cir. 1995).

Because of the respect a juror has for a judge, the judge's commentary can mold the juror's opinion. Holderer, 114 Nev. at 851, 963 P.2d at 463. As stated in Parodi,

> "[t]he average juror is a layman; the average layman looks with most profound respect to the presiding judge; and the jury is, as a rule, alert to any remark that will indicate favor or disfavor on the part of the trial judge. Human opinion is ofttimes formed upon circumstances meager and insignificant in their outward appearance; and the words and utterances of a trial judge, sitting with a jury in attendance, are liable, however unintentional, to mold the opinion of the members of the jury . . . ."

111 Nev. at 367-68, 892 P.2d at 589-90 (quoting Ginnis v. Mapes Hotel Corp., 86 Nev. 408, 416-17, 470 P.2d 135, 140 (1970)).

We now turn to the specific statements made by the district court judge, which Camacho-Moreno contends were prejudicial.

<u>Statement regarding rape statistics</u>

The first statement made by the district court to the jury venire concerned a statistic that one-quarter of women had been subject to unwanted sexual advances. Specifically, the district court stated that it had

> learned that there's credible statistics that maybe 25 percent, or better, of all women have received unwanted sexual advances, many of them at a time before they reach the age of majority, or 18. So statistics hold true one quarter of the women in this room may have been victimized by someone at some time. And I'm not here to embarrass anybody.
>
> . . . .
>
> . . . [I]f any of you have been victims at any time during your lives, and if one of two things have gone on -- one, the case likely to conjure up the past for you, and you might bring that frame of mind or those colored glasses to this proceeding, this case history; also, if you're looking for an opportunity to vindicate something that remains unvindicated in your life, this is not the case for you.

Camacho-Moreno contends that the statements created a presumption in the jurors' minds that there was a high probability that A.M. was indeed sexually abused. The statements, however, were taken out of context. Although a statistic offered by the district court as evidence is inappropriate, a district court's use of a statistic to determine the fitness of a juror does not rise to the level of admitting unsupported evidence into the record. See Quercia, 289 U.S. at 470. More importantly,

the district court made this statement in an attempt to make the jury panel _more fair_ by attempting to dismiss any juror who had been subjected to unwanted sexual advances and, as a result, could not remain fair and impartial. As such, these comments were not error and did not prejudice Camacho-Moreno.

### Statement regarding Hispanic jurors

Next, during voir dire, the district court, in commenting on the number of Hispanic jurors that had been excused, stated:

> In particular, if you want to know the truth, I'd like to have some Hispanic jurors on the case who may have a cultural understanding, because the defendant appears to me to have an Hispanic background, but I also know that there are -- how do I say this? Let me say it this way: Believe it or not, there are -- some of you may or may not know this, but there are some places in Mexico where this kind of thing is more common than in other places.

The district court went on to state that

> [w]hatever stories you may have heard about whomever, this man is innocent as he sits here; do you understand that?
>
> . . . .
>
> . . . You'd have to say he's innocent because there's no evidence. Do you see what I mean? There's none, zero evidence. She has to put on the evidence that convinces you, the DA does; do you understand that?

Although the district court qualified its statements by instructing the jury that there was no evidence of guilt yet presented, the statement as a whole carries with it a danger of molding the opinion of the potential jurors. Parodi, 111 Nev. at 368, 892 P.2d at 590-91. The

comment regarding the possibility that rape is more common in Mexico or in Mexican communities is clearly inappropriate commentary on Camacho-Moreno's race, which is always prejudicial. Rush, 56 F.3d at 922-23 (stating that the district court's statement that "races have a tendency to stick together" was error). These comments, also, tend to "remain firmly lodged in the memory of the jury and to excite a prejudice which would preclude a fair and dispassionate consideration of the evidence." Quercia, 289 U.S. at 472. We, therefore, conclude that this statement alone necessitates reversal of the judgment.

Statement regarding A.M. being "pretty"

Camacho-Moreno's third issue with the district court's statements came during the State's direct examination of A.M. The State attempted to admit into evidence a collage of A.M.'s school photos in order to assist it in setting a timeline of events. After Camacho-Moreno's objection, and subsequent overruling, the district court stated:

> I'm going to allow, over objection, these pictures -- it's a collage of evidence -- because there are issues over the dates and times of the events that were alleged in this case. But the mere fact that she's a very pretty young lady at those ages is not relevant, and you're so instructed.

At first blush, this comment seems innocuous. However, the district court's commentary on the victim's appearance is wholly irrelevant and therefore inappropriate to the district court's admission of the proffered evidence. The comment does nothing more than to impassion the jury and show the district court's favoritism for the young female victim. Quercia, 289 U.S. at 469; see also Parodi, 111 Nev. at 367-68, 892

SUPREME COURT
OF
NEVADA

(O) 1947A

P.2d at 589-90. Consequently, this statement, on its own, necessitates reversal.

<u>Statement regarding the time that passed between the preliminary hearing and the trial</u>

The final statement that Camacho-Moreno takes issue with occurred during A.M.'s cross-examination. When the State asked A.M. if she had reviewed the transcripts from other conversations she had with the police and the State, A.M. stated that she had reviewed a transcript from the preliminary hearing two years prior. At that point, the district court

> instruct[ed] the jury that the statement that she went to court two years ago should, in your mind, signify nothing. A case arrives here by a process and you're to place no emphasis or consideration on the fact that there may have been another hearing or a preliminary hearing in this case.

Camacho-Moreno contends that the district court's statement limited his ability to fully cross-examine the witness. This argument is disingenuous. The district court's comments were simply an attempt to explain to the jury that it does not matter that there was a significant amount of time that passed between the preliminary hearing and the trial. There was no attempt on the part of the district court to limit Camacho-Moreno's ability to show A.M.'s prior inconsistent statements. It is not clear from the record that the district court was trying to improperly comment on the weight of the evidence or credibility of the witness.

However, in light of the two prejudicial statements made by the district court, we must conclude that the misconduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due

process.'" Valdez v. State. 124 Nev. 1172, 1189, 196 P.3d 465, 477 (2008) (quoting Darden v. Wainwright, 477 U.S. 168, 181 (1986)).

We therefore

ORDER the judgment of the district court REVERSED AND REMAND this matter to the district court for a new trial.[1]

_____Pickering_____, C.J.
Pickering

_____Hardesty_____, J.
Hardesty

_____Saitta_____, J.
Saitta

cc:    Chief Judge, The Second Judicial District Court
Hon. Charles M. McGee, Senior Judge
Richard F. Cornell
Attorney General/Carson City
Washoe County District Attorney
Washoe District Court Clerk

---

[1]Because we are reversing the judgment based on the district court's improper comments during jury selection, we decline to address the other issues raised on appeal.