# IN THE SUPREME COURT OF THE STATE OF NEVADA

WALTER KANEEKI CLARK,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 80018

FILED

JUN 30 2021

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an NRAP 4(c) direct appeal from a judgment of conviction, pursuant to a jury verdict, of first-degree murder with the use of a deadly weapon and attempted murder with the use of a deadly weapon. Eighth Judicial District Court, Clark County; Jerome T. Tao, Judge.

Appellant Walter Kaneeki Clark argues that (1) the district court erred by failing to administer a required oath before asking jurors questions; (2) the district court committed misconduct by not properly curing the remarks of a prospective juror; (3) the State committed prosecutorial misconduct during cross-examination; (4) the State committed prosecutorial misconduct in its closing argument; (5) the district court erred in instructing the jury on voluntary manslaughter; (6) the district court erred in instructing the jury on flight; (7) the State presented insufficient evidence of premeditation or deliberation to support either of his convictions; (8) the district court erred in admitting a preliminary hearing transcript; and (9) cumulative error warrants reversal.

First, Clark argues that the district court erred by failing to administer the oath NRS 16.030(5) requires before asking jurors

preliminary questions. Because he did not object, we review for plain error. *See Martinorellan v. State*, 131 Nev. 43, 48, 343 P.3d 590, 593 (2015) (explaining that this court reviews "all unpreserved errors . . . for plain error"). For reversal upon plain-error review, the "appellant must demonstrate that: (1) there was an error; (2) the error is plain, meaning that it is clear under current law from a casual inspection of the record; and (3) the error affected the defendant's substantial rights." *Jeremias v. State*, 134 Nev. 46, 50, 412 P.3d 43, 48 (2018) (internal quotation marks omitted). "[A] plain error affects a defendant's substantial rights when it causes actual prejudice or a miscarriage of justice (defined as a grossly unfair outcome)." *Id.* at 51, 412 P.3d at 49 (internal quotation marks omitted).

"Before persons whose names have been drawn are examined as to their qualifications to serve as jurors, the judge or the judge's clerk *shall* administer an oath or affirmation to them . . . ." NRS 16.030(5) (emphasis added). We have held that "a district court commits structural error when it fails to administer the oath to potential jurors pursuant to NRS 16.030(5)." *Barral v. State*, 131 Nev. 520, 525, 353 P.3d 1197, 1200 (2015). However, "[t]he failure to preserve an error, even an error that has been deemed structural, forfeits the right to assert it on appeal," *Jeremias*, 134 Nev. at 50, 412 P.3d at 48, and instead we review for plain error.

The district court plainly erred by failing to administer the NRS 16.030(5) oath before asking jurors four preliminary questions. However, because overwhelming evidence supports the verdict, Clark failed to show that the error caused actual prejudice or a miscarriage of justice. *See Green v. State*, 119 Nev. 542, 548, 80 P.3d 93, 97 (2003) (explaining that an error does not affect a defendant's substantial rights if the State presents overwhelming evidence of the defendant's guilt). Specifically, four witnesses testified that Clark shot the victims in a manner inconsistent

with Clark's contention that he acted in self-defense. Moreover, Clark shot one victim in the buttocks, suggesting that the victim was retreating and therefore was not the first aggressor.[1] Finally, Clark shot each victim multiple times, further negating the inference that he was attempting to impede the victim's purported aggression. Given the overwhelming strength of this evidence, Clark has not shown that this error affected his substantial rights.

Second, Clark contends that the district court committed misconduct by failing to cure a prospective juror's comment during voir dire. Clark did not object. We apply plain-error review to unpreserved claims of judicial misconduct. *Parodi v. Washoe Med. Ctr., Inc.*, 111 Nev. 365, 368, 892 P.2d 588, 590 (1995). "The influence of the trial judge on the jury is necessarily and properly of great weight and his lightest word or intimation is received with deference, and may prove controlling." *Quercia v. United States*, 289 U.S. 466, 470 (1933) (internal quotation marks omitted). Thus, we have explained that "[w]hat may be innocuous conduct in some circumstances may constitute prejudicial conduct in a trial setting." *Parodi*, 111 Nev. at 367, 892 P.2d at 589. Under NCJC Canon 2.8(B), "[a] judge shall be patient, dignified, and courteous to . . . jurors."

During voir dire, the district court asked the venire whether any of them knew the parties' proposed witnesses. One prospective juror said that he worked as a custodian at the police department and heard about Clark's case. Upon further inquiry from the district court, the juror responded frankly, "Well, the impression I got was [Clark]'s guilty as can

---

[1]Although Clark argues that contradictory evidence shows that he acted in self-defense, we find the strength of evidence presented against him to be overwhelming.

be." The district court properly dismissed the prospective juror and admonished the remaining venire to disregard the juror's comments. In doing so, however, the district court—in the presence of other prospective jurors—threatened to "call the sheriff" and "put [the juror] in jail" for his statements. The district court further stated, "I'm going to think very hard about whether I ought to call the sheriff and don't think he's not going to take my call about this." We are concerned that the district court's impatient and uncourteous comments to the prospective juror could have had a chilling effect on other prospective jurors. As we have explained, district courts "should exercise restraint over judicial conduct and utterances." *Azucena v. State*, 135 Nev. 269, 273, 448 P.3d 534, 538 (2019) (quoting *State v. Miller*, 49 P.3d 458, 467 (Kan. 2002)). Here, the district court's conduct fell short of the high standards imposed on our district judges and constitutes judicial misconduct. Nonetheless, given the overwhelming evidence supporting the verdict, we conclude that the district court's misconduct does not warrant reversal.[2]

Third, Clark argues that the prosecutor committed misconduct by asking him improper questions during cross-examination. When reviewing a claim of prosecutorial misconduct, we apply a two-step analysis. *Valdez v. State*, 124 Nev. 1172, 1188, 196 P.3d 465, 476 (2008). Our first inquiry is whether the State's conduct was improper. *Id.* A client's confidential communications with counsel are privileged. *Manley v. State*, 115 Nev. 114, 120, 979 P.2d 703, 707 (1999). "Where a client voluntarily reveals portions of the communications with the attorney, those revelations amount to a waiver of the attorney-client privilege as to the remainder of

---

[2]We have also reviewed Clark's arguments about Juror 2, and conclude that they are meritless and do not warrant reversal.

the conversation or communication about the same subject matter." *Id.* (internal quotation marks omitted). "However, for waiver to occur, the witness's answers must be wide enough in scope and deep enough in substance to constitute a significant part of the communication." *Id.* (internal quotation marks omitted). "Merely acknowledging the fact that the witness discussed a subject with his attorney does not waive the privilege." *Id.* at 121, 979 P.2d at 707 (internal quotation marks omitted).

On direct examination, Clark's attorney asked him why he did not report the shootings to police. Clark answered that he reported the shootings to his attorney. On cross-examination, the prosecutor asked Clark, "[W]hat specific things has [your attorney] helped you with legally?" Clark answered that "one time I went to jail in North Las Vegas for having . . . my gun permit." Clark further explained that his attorney got the charge "kicked out."

Clark did not disclose a significant part of his communications with his attorney on direct-examination; he merely stated that he discussed the shootings with his attorney. Because Clark did not waive the attorney-client privilege, the prosecutor improperly inquired into Clark's communications with his attorney during cross-examination. Therefore, the prosecutor committed misconduct by eliciting Clark's testimony.

Having concluded that the State's conduct was improper, we turn to the next step of our analysis. *Valdez*, 124 Nev. at 1188, 196 P.3d at 476 ("[I]f the conduct was improper, we must determine whether the improper conduct warrants reversal."). However, plain-error review applies if, as here, the prosecutorial misconduct is unpreserved because the defendant did not object. *Id.* at 1190, 196 P.3d at 477. Here, the State

presented overwhelming evidence of Clark's guilt, so we conclude that the prosecutorial misconduct did not prejudice his substantial rights.[3]

Fourth, Clark alleges that the State committed prosecutorial misconduct during its closing argument. We first determine whether the State committed prosecutorial misconduct. *Valdez*, 124 Nev. at 1188, 196 P.3d at 476. "We have held that the prosecutor calling a witness a liar is improper and even asserting that the defendant is lying is equally impermissible." *Rowland v. State*, 118 Nev. 31, 39, 39 P.3d 114, 119 (2002) (footnote omitted). In the State's rebuttal closing argument, it quoted Jury Instruction 38, which stated, "If you believe that a witness has lied about any material fact in the case, you may disregard the entire testimony of that witness . . . ." The State then insinuated that Clark was lying. Likewise, the State insinuated during closing arguments that Clark was lying about the victims' monikers. While an argument can be made that these statements were improper, Clark did not object.

Turning to the second step of this analysis, we apply plain-error review because Clark did not object. *Valdez*, 124 Nev. at 1190, 196 P.3d at 477. In light of the overwhelming evidence of Clark's guilt, we conclude that this alleged misconduct did not prejudice Clark's substantial rights.

---

[3]Clark further argues that the State committed prosecutorial misconduct by objecting to his testimony that one of the victims "came over to my house . . . [and] *he told me* he got out of prison . . . [and] was selling stolen firearms for a living." (Emphasis added.) The district court sustained the objection and admonished the jury to disregard the statement. Clark separately argues that striking his testimony barred him from presenting a defense. Clark did not object, so we review for plain error. Hearsay is inadmissible without a qualifying exception, *see* NRS 51.065(1), and Clark failed to argue on appeal that any hearsay exception applied to his testimony describing the victim's out-of-court statement. Thus, Clark has not shown a plain error affecting his substantial rights.

Fifth, Clark argues that the district court gave erroneous manslaughter instructions because they failed to inform the jury that the State has the burden to prove that the victim's death was not the result of provocation. As Clark did not object, we will review for plain error. *Martinorellan*, 131 Nev. at 48, 343 P.3d at 593. In *Crawford v. State*, we explained, "[T]he State has the burden of proving beyond a reasonable doubt that the defendant did not act in the heat of passion caused by the requisite legal provocation." 121 Nev. 744, 755, 121 P.3d 582, 589 (2005) (emphasis omitted). We clarified, however, that the district court should provide such an instruction "upon [the defendant's] request." *Id.* at 754, 121 P.3d at 589. Clark maintained that he killed the victim in self-defense and did not request an instruction setting forth the State's burden to prove the absence of provocation insofar as manslaughter was at issue. Thus, Clark has not shown that the manslaughter instructions were plainly erroneous or affected his substantial rights.

Sixth, Clark contends that the district court gave an erroneous flight instruction because there was not an unbroken chain of inferences to show that he fled. He suggests that he left the scene of the crime to get medical attention for one of the victims. He did not object, so we review for plain error. *Martinorellan v. State*, 131 Nev. 43, 48, 343 P.3d 590, 593 (2015). A flight instruction is proper if admitted evidence shows "that the defendant fled with consciousness of guilt and to evade arrest." *Rosky v. State*, 121 Nev. 184, 199, 111 P.3d 690, 700 (2005). Also, "[f]light instructions are valid only if there is . . . a chain of unbroken inferences from the defendant's behavior to the defendant's guilt of the crime charged." *Jackson v. State*, 117 Nev. 116, 121, 17 P.3d 998, 1001 (2001).

Clark's testimony created an evidentiary basis for a flight instruction because he testified that after he shot the victims, he drove one

of them to the hospital, left the victim outside, walked away, and checked into a motel under his friend's name. This evidence would allow a jury to conclude that Clark fled the scene of the crime consciously aware of his guilt and to evade arrest. Insofar as Clark argues that he fled only to get medical attention for one victim, which purportedly broke the chain of inferences warranting a flight instruction, he does not explain why he left that victim outside of the hospital and walked away. Thus, Clark has not shown that the flight instruction was a plain error affecting his substantial rights.

Seventh, Clark alleges that the State presented insufficient evidence to prove first-degree murder. When reviewing the sufficiency of the evidence, we determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis omitted). "Murder of the first degree is murder which is perpetrated by means of any kind of willful, deliberate, and premeditated killing." *Byford v. State*, 116 Nev. 215, 236, 994 P.2d 700, 714 (2000) (explaining that the State must prove all three elements beyond a reasonable doubt to convict of first-degree murder); *see also* NRS 200.030(1). "Willfulness is the intent to kill." *Id.* "Deliberation is the process of determining upon a course of action to kill . . . ." *Id.* "A deliberate determination may be arrived at in a short period of time." *Id.* "Premeditation is a design, a determination to kill, distinctly formed in the mind by the time of the killing." *Id.* at 237, 994 P.2d at 714.

Viewing the evidence in the light most favorable to the State, a rational trier of fact could have found that Clark acted (1) willfully because he shot the victim four times, showing that he intended to kill the victim; (2) deliberately because he fired a shot in the air, paused for several seconds, and then shot the victim, showing that, after reflection, he chose to kill the

victim; and (3) with premeditation because he shot the victim in the face, showing that his actions were designed to kill the victim, rather than impede the victim's alleged aggression. Thus, the State presented sufficient evidence for a rational trier of fact to find the essential elements of first-degree murder beyond a reasonable doubt.[4]

Eighth, Clark argues that the district court violated his Confrontation Clause rights by admitting a transcript containing a witness's testimony proffered at the preliminary hearing of Clark's codefendant. The Confrontation Clause guarantees defendants the right to confront witnesses that testify against them. U.S. Const. amend. VI. "In accordance with that right, prior testimony *from a witness unavailable at trial* is admissible only if the defendant had 'a prior opportunity for cross-examination.'" *State v. Eighth Judicial Dist. Court (Baker)*, 134 Nev. 104, 106, 412 P.3d 18, 21 (2018) (emphasis added) (quoting *Crawford v. Washington*, 541 U.S. 36, 68 (2004)). NRS 51.055, which defines "unavailab[ility] as a witness," plainly does not apply when the witness testifies at trial. Here, Clark was not present at his codefendant's preliminary hearing, but the witness testified at both the codefendant's preliminary hearing and Clark's trial. Because the witness testified at

---

[4]Clark separately argues that insufficient evidence supported his conviction for the attempted murder of the second victim. "Attempted murder is the performance of an act or acts which tend, but fail, to kill a human being, when such acts are done with express malice, namely, with the deliberate intention unlawfully to kill." *Keys v. State*, 104 Nev. 736, 740, 766 P.2d 270, 273 (1988). Because Clark shot the second victim three times, a rational trier of fact could have found that he intended unlawfully to kill the second victim, rather than to impede the victim's alleged aggression. Thus, sufficient evidence supported Clark's conviction for attempted murder.

Clark's trial and Clark cross-examined the witness, the admission of the preliminary transcript did not violate Clark's Confrontation Clause rights. Thus, this argument is meritless.

Clark further argues that the preliminary-hearing transcript[5] was inadmissible because written transcripts are not statements, so they are hearsay and not admissible under the prior-consistent-statements hearsay exception. However, NRS 51.045(1) provides that written or oral assertions are statements for the purpose of NRS 51.035, which defines hearsay. Accordingly, if a written statement in a transcript meets the criteria of a prior consistent statement, *see Runion v. State*, 116 Nev. 1041, 1052, 13 P.3d 52, 59 (2000), it may be admissible.[6] Thus, we conclude that this argument is meritless.

Ninth, Clark asserts that cumulative error warrants reversal. "The cumulative effect of errors may violate a defendant's constitutional right to a fair trial even though errors are harmless individually." *Valdez v. State*, 124 Nev. 1172, 1195, 196 P.3d 465, 481 (2008) (internal quotation marks omitted). This court considers three factors when considering a claim of cumulative error: "(1) whether the issue of guilt is close, (2) the quantity and character of the error, and (3) the gravity of the crime charged." *Id.* (internal quotation marks omitted).

Here, the district court plainly erred by failing to administer the oath under NRS 16.030(5). The district court also committed

---

[5]The district court admitted only a brief portion of the preliminary hearing transcript to show the witness's prior consistent statement.

[6]Clark does not separately argue that the transcript was inadmissible as a prior consistent statement. Thus, our analysis does not reach the issue of whether the statements in the transcript were ultimately admissible as prior consistent statements.

misconduct by improperly threatening a prospective juror. Finally, the State committed prosecutorial misconduct during cross-examination and perhaps closing arguments. Although we find these errors occurred and Clark was convicted of grave crimes, the overwhelming strength of evidence presented against Clark supports the verdict and negates the inference that he was prejudiced. *Cf. United States v. Frederick*, 78 F.3d 1370, 1381 (9th Cir. 1996) ("[W]here the government's case is weak, a defendant is more likely to be prejudiced by the effect of cumulative errors."); *see also Lutwak v. United States*, 344 U.S. 604, 619 (1953) ("A defendant is entitled to a fair trial but not a perfect one."). As described above, overwhelming evidence shows that Clark committed first-degree murder and attempted murder. Thus, we conclude that cumulative error does not warrant reversal.

Accordingly, we

ORDER the judgment of conviction AFFIRMED.

_____, J.
Parraguirre

_____, J.
Stiglich

_____, J.
Silver

cc: Chief Judge, Eighth Judicial District Court
Eighth Judicial District Court, Department 20
James J. Ruggeroli
Attorney General/Carson City
Clark County District Attorney
Eighth District Court Clerk